UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GEORGE MERLE STOVER,

                          Plaintiff,

                                                      Case # 17-CV-1029-FPG

v.

                                                      DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

## INTRODUCTION

Plaintiff George Merle Stover brings this action pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 13. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

On September 16, 2014, Stover protectively applied for DIB and SSI with the Social Security Administration ("SSA"). Tr.[1] 152-62. He alleged disability since August 14, 2014 due to a heart attack, use of a pacemaker/defibrillator, and skin cancer. Tr. 232. On April 28, 2016, Stover and a vocational expert ("VE") testified at a hearing via videoconference before

---

[1] "Tr." refers to the administrative record in this matter.

1

Administrative Law Judge Lawrence Levey ("the ALJ"). Tr. 29-60. On June 10, 2016, the ALJ issued a decision finding that Stover was not disabled within the meaning of the Act. Tr. 15-24. That decision became the Commissioner's final decision when the Appeals Council denied Stover's request for review on August 29, 2017. Tr. 1-6. Thereafter, Stover commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

**LEGAL STANDARD**

**I.     District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence).

**II.    Disability Determination**

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

2

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(4)(c). If the claimant does not have a severe impairment or combination of impairments that is severe, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. 20 C.F.R. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

## I. The ALJ's Decision

The ALJ's decision analyzed Stover's claim for benefits under the process described above. At step one, the ALJ found that Stover had not engaged in substantial gainful activity since the alleged onset date. Tr. 17. At step two, the ALJ found that Stover has the following severe impairments: coronary artery disease status-post myocardial infarction, congestive heart failure, hypertension, hyperlipidemia, reactive airway disease, a hearing impairment, post-traumatic stress disease, and affective and anxiety disorders. Tr. 17-18. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 18-19.

Next, the ALJ determined that Stover retains the RFC to perform light work[2] with additional limitations. Tr. 19-22. Specifically, the ALJ found that Stover cannot climb ladders, ropes, or scaffolds or balance on uneven surfaces; can occasionally climb ramps or stairs and reach overhead; must avoid concentrated exposure to temperature extremes, excessive wetness and humidity, and noise louder than that found in a typical office environment; cannot be exposed to excessive vibration, environmental irritants, unprotected heights, or hazardous machinery; and cannot perform work that requires commercial driving or a high degree of auditory acuity. Tr. 19. The ALJ also found that Stover can perform only simple, routine, and repetitive tasks; can tolerate

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

only occasional interpersonal interaction with the public, coworkers, and supervisors; and is limited to work generally performed in a solitary or small group environment. *Id.*

At step four, the ALJ relied on the VE's testimony and found that this RFC prevents Stover from performing his past relevant work as a commercial truck driver. Tr. 22-23. At step five, the ALJ relied on the VE's testimony and found that Stover can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 23-24. Specifically, the VE testified that Stover could work as a collator, towel folder, and garment sorter. Tr. 23. Accordingly, the ALJ concluded that Stover was not disabled under the Act. Tr. 24.

## II. Analysis

Stover argues that remand is required because the ALJ erred at step five when he failed to resolve a conflict between the jobs the VE identified and the description of those jobs in the Dictionary of Occupational Titles ("DOT").[3] ECF No. 11-1 at 18-21; ECF No. 14 at 2-4. Specifically, Stover asserts that a conflict exists because the RFC determination limited him to only occasional overhead reaching and precluded "concentrated exposure to . . . noise louder than that found in a typical office environment," yet the jobs the VE identified require frequent or constant reaching and moderate or loud noise. *Id.* For the reasons that follow, the Court finds that the ALJ erred at step five and that remand is required.

At step five of the disability analysis, the ALJ must determine whether the claimant can adjust to other work for which there are a significant number of jobs in the national economy. 20

---

[3] Stover advances another argument that he believes requires reversal of the Commissioner's decision. ECF No. 11-1 at 21-24. The Court will not reach that argument, however, because it disposes of this matter based on the ALJ's step five error.

C.F.R. §§ 404.1560(c), 416.960(c). An ALJ can make the step five determination by eliciting VE testimony. *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014).

Social Security Ruling ("S.S.R.") 00-4p, which clarifies the SSA's standards for using a VE, provides that:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the [ALJ]'s duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict. The [ALJ] must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

S.S.R. 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000). This Ruling "place[s] an affirmative duty on the ALJ to identify and resolve any conflict between the [VE]'s testimony and the DOT before relying on such testimony." *Patti v. Colvin*, No. 13-CV-1123-JTC, 2015 WL 114046, at *6 (W.D.N.Y. Jan. 8, 2015) (citation omitted).

At Stover's hearing, the ALJ asked the VE to assume a hypothetical individual with Stover's age, education level, and work experience who had a variety of limitations including "only occasionally engag[ing] in overhead reaching" and "avoid[ing] concentrated exposure to … [n]oise louder than that found in a typical office environment." Tr. 55-56. The VE responded that such an individual could work as a collator, towel folder, and garment sorter. Tr. 56-57. The ALJ asked the VE whether his testimony was consistent with the information set forth in the DOT and the VE said that it was. Tr. 58.

### A. Reaching Limitation

Despite the VE's assertion that his testimony was consistent with the DOT, all three of the identified jobs require frequent or constant reaching even though the hypothetical asked him to assume an individual who can only occasionally reach overhead. *See* DOT # 653.687-010, 1991 WL 685810 (collator); # 589.687-014, 1991 WL 684519 (cloth folder); # 222.687-014, 1991 WL 672131 (garment sorter). "Occasional" means up to one-third of the workday, while "frequent" means one-third to two-thirds and "constant" means two-thirds or more of the time. *Id.* "Reaching" is defined as "extending the hands and arms in *any direction*." S.S.R. 85-15, 1985 WL 56857, at *7 (S.S.A. Jan. 1, 1985) (emphasis added).

At Stover's hearing, the ALJ merely asked the VE whether his testimony was consistent with the DOT, without specifically discussing the conflict as to reaching. Tr. 58. The ALJ also concluded in his decision, without further explanation, that "[p]ursuant to SSR 00-4p . . . the [VE]'s testimony is consistent with the information contained in the [DOT]." Tr. 24. Neither the exchange at the hearing nor the ALJ's statement in his decision satisfied his duty to "identify, explain, and resolve" the conflicts between the VE's testimony and the DOT. *See, e.g.*, *Patti*, 2015 WL 114046, at *6 ("The ALJ's catch-all question to the [VE] regarding any inconsistencies between the [VE]'s testimony and the DOT does not satisfy the ALJ's duty to identify, explain, and resolve the conflicts between the [VE]'s testimony and her decision."); *Diaz v. Astrue*, No. 3:11-cv-317 (VLB), 2012 WL 3854958, at *6 (D. Conn. Sept. 5, 2012) ("This Court finds the ALJ's conclusive statement at the end of his Decision to be insufficient because the plaintiff never received an explanation for the resolution of the inconsistency between the DOT characteristics and the RFC finding when her benefits were denied."); *Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014) ("[T]he record does not reflect whether the VE or the ALJ even recognized the possible

conflict between the hypothetical describing a claimant who could reach overhead only occasionally, and [the] DOT job listing . . . indicating that a check-weigher job involved constant reaching. Further, the VE did not explain the possible conflict and the ALJ sought no such explanation.").

Accordingly, the ALJ erred when he failed to identify and resolve the conflict between the jobs identified and the information contained in the DOT that each position requires frequent or constant reaching in all directions. *See Patti*, 2015 WL 114046, at *6 (finding that the ALJ erred where he failed to resolve the conflict between the plaintiff's ability to reach only occasionally and the VE's testimony that the plaintiff could perform jobs that required frequent reaching according to the DOT); *Pearson v. Colvin*, 810 F.3d 204, 210-11 (4th Cir. 2015) (same); *Kemp*, 743 F.3d at 632-33 (same).

### B.  Noise Limitation

Similarly, all three of the jobs the VE identified involve moderate or loud noise even though the hypothetical asked him to assume an individual who must avoid concentrated exposure to noise louder than that found in a typical office environment. *See* DOT #653.687-010, 1991 WL 685810 (collator); #589.687-014, 1991 WL 684519 (cloth folder); #222.687-014, 1991 WL 672131 (garment sorter). It is unclear exactly how much noise the ALJ believed Stover could tolerate and it is possible that a job with moderate noise might be suitable while a job with loud noise might not. This ambiguity created a conflict that the ALJ should have resolved.

The SSA's Rulings explain that an individual's inability to tolerate "excessive amounts of noise" will likely have a minimal impact on his ability to work because most job environments do not involve great noise. S.S.R. 85-15, 1985 WL 56857, at *8. When an individual can tolerate only "very little noise," however, his ability to work is considerably impacted because very few

8

jobs are entirely free of noise. *Id.* "Where the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of occupational reference materials or the services of a [VE]." *Id.*

Here, the ALJ's finding that Stover must avoid concentrated exposure to noise louder than that found in a typical office environment likely falls between "very little" and "excessive" noise, and therefore he should have further developed this issue. Instead, the ALJ merely asked the VE at Stover's hearing whether his testimony was consistent with the DOT, without specifically resolving the noise-related conflict. Tr. 58. As mentioned previously, the ALJ's decision contained only a conclusory statement that he found the VE's testimony consistent with the DOT, which did not satisfy his duty to "identify, explain, and resolve" the relevant conflicts. *See Patti*, 2015 WL 114046, at *6. Thus, the ALJ erred when he failed to identify and resolve the conflict between the jobs identified and the information contained in the DOT that each position involves moderate or loud noise.

Accordingly, for all the reasons stated, the Court finds that substantial evidence does not support the ALJ's step five findings and remand is required. *See Aubeuf v. Schweiker*, 649 F.2d 107, 112 (2d Cir. 1981) ("When the claimant has established that his impairment prevents him from returning to his previous employment, the burden shifts to the [Commissioner], who must produce evidence to show the existence of alternative substantial gainful work which exists in the national economy *and which the claimant could perform*[.]") (internal quotation marks and citation omitted) (emphasis added).

**CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000); 42 U.S.C. § 1383(c)(3). The Clerk of Court will enter judgment and close this case.

IT IS SO ORDERED.

Dated: October 23, 2018
       Rochester, New York

                                        HON. FRANK P. GERACI, JR.
                                        Chief Judge
                                        United States District Court